BRADLEY, Judge.
The plaintiff, Todd Farm, Inc., appeals the trial court’s decision which gave it judgment for $5,361.74. The plaintiff had sought approximately $15,000 from the defendant, Joseph Haponski, Jr., for breach of contract.
The facts are not in dispute. On March 16, 1976 the defendant purchased two parcels of real estate from the plaintiff. As part of the consideration for the conveyance of the real estate, the plaintiff agreed to pay fifty percent of the cost of the curb, gutter and pavement necessary to extend a street called Plantation Way. This street fronted the property purchased by the defendant. The agreement between the parties is set out in a letter from the plaintiff which provides in pertinent part:
Todd Farm, as a part of the consideration for this transaction, acknowledges that Parcels “A” and “B” have a combined frontage along the Northerly boundary of an Easterly extension of Plantation Way of 400 feet — only 81.17 feet of which presently is paved and otherwise improved. We agree, therefore, that at such time as you may wish to plat the remainder of your property along *639 Plantation Way, as extended, we will join with you in the dedication of such Easterly extension of Plantation Way and that we will join with you in installing the necessary curb, gutter, and pavement which may be required by the City of Montgomery. Water and sewer mains already are installed along the proposed Easterly extension of Plantation Way, and we will not obligate ourselves to make any additional sewer laterals or water tap installations for your benefit, but we do specifically and affirmatively agree to pay 50% of the cost of the Easterly extension of Plantation Way for curb, gutter, and pavement to the Easterly boundary of Parcel “A”, whenever either you or we determine that such extension should be made. Conversely, we shall expect the same cooperation from you.
Subsequently, on January 12, 1977, the defendant advised the plaintiff that he wished to extend Plantation Way pursuant to the parties’ earlier agreement. The project was commenced in July of 1977, and at its conclusion a bill in the amount of $14,888.97 was sent to the defendant for payment. This statement was based on a final estimate prepared by the project engineer and included the following:
Item:
1. Clearing and grubbing_$ 500.00
2. Street grading _ 1,780.00
3. Full depth asphalt_ 7,549.50
4. Compacted subgrade _ 1,301.25
5. Std. concrete curb & gutter_ 2,273.60
6. Concrete header_ 111.00
7. Barricade _ 175.00
8. Tap and saddle_ 150.00
9. Adjust existing manhole_ 100.00
10. Sanitary laterals_ 340.00
11. Reinf. concrete pipe-Class IV .. 1,762.50
12. Trench gate _ 3,200.00
13. Junction box_ 450.00
14. Headwall_ 400.00
15. Tail ditch excavation _ 900.00
16. Adjust pipe under haul road_ 300.00
17. Water laterals_ 1,040.00
18. Well points_ 1,700.00
19. Washed gravel _ 2,020.72
20. Equipment rental_ 5,255.00
21. Water lines_ 730.30
Total _ $32,038.87
Mr. Haponski testified that prior to the making of the agreement, he met with Carl W. Bear, an officer of plaintiff, at the property site in question and they discussed the proposed project. According to Mr. Hapon-ski, Mr. Bear informed Mr. Haponski that the utilities were in place and all that remained to be done was the installation of curb, gutter and asphalt pavement. Mr. Haponski further stated that he knew that a storm drainage system had to be installed as a part of a street paving project and that no such system had been installed at the time he made the agreement with Mr. Bear. They then agreed that thirty days’ notice would be given if construction on the street was to be commenced. Subsequently, a letter was written by Mr. Bear to Mr. Hapon-ski confirming the agreement. The agreement is as set out above.
The defendant testified that he was liable for the first five items on the statement of costs incurred on the project but that he was not liable for and had not agreed to pay the other items on the statement. He stated that the remaining sixteen items related to the installation of water and sewer lines and a storm drainage system and he had not agreed to pay for anything other than what was necessary to install the curb, gutter and asphalt pavement, i. e., the first five items of the cost statement.
The general rule of contract law is that when parties reduce their agreements and obligations to writing, the writing, in the absence of mistake or fraud, is the sole expositor of the transaction and intention of the parties, and the court cannot, under the guise of construction, provide a new and different contract for the parties. DeKalb Agresearch, Inc. v. Abbott, 391 F.Supp. 152 (N.D.Ala.1974), aff’d., 511 F.2d 1162 (5th Cir. 1975); Gunnels v. Jimmerson, Ala., 331 So.2d 247 (1976).
Plaintiff argues that defendant is required by his written agreement to participate in the cost of installing the “necessary curb, gutter, and pavement which may be required by the City of Montgomery.” Plaintiff further contends that the installation of a storm sewer system is necessary *640 before a paved street will be accepted by the City of Montgomery. The plaintiff also says that certain other items of the statement of costs are required as a necessary part of the installation of the curb, gutter and pavement.
The parties’ agreement specifically provides that the water and sewer mains had been placed along the extension of Plantation Way, and the undisputed testimony of plaintiff’s only witness, an engineer familiar with the project, was that reference to sewer mains is understood in the construction business to mean sanitary sewer mains and does not refer to storm sewer systems. He further stated that a storm sewer system is an integral part of a street paving project and the City of Montgomery would not approve a street paving project without provision for a storm drainage system. Mr. Haponski also testified that he knew the storm drainage system had not been installed at the time of the agreement. He further stated that a storm drainage system is required by the City of Montgomery before a street could be paved. But he also said that he did not intend to pay for anything other than the first five items on the statement of cost.
The terms of the written contract, not the mental operations of one of the parties, control the interpretation of the contract. Kinmon v. King Auction Co., 290 Ala. 323, 276 So.2d 569 (1973). In the instant case the subjective intent of defendant is of no consequence. The agreement must be the sole expositor of the intention of the parties. The evidence in the case at bar showed that the installation of the necessary curb, gutter and pavement as required by the City of Montgomery included not only a storm drainage system but also other items of construction expense. Therefore the judgment of the trial court is reversed and the cause remanded for a determination of what additional costs the defendant is liable for in the installation of the necessary curb, gutter and pavement which may be required by the City of Montgomery. Not to be included in this list of costs are the items related to the installation of water and sewer lines.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P. J., and HOLMES, J., concur.